# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| SIMON GEBREGZIABHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19CV470 SPM |
| | ) | |
| FRANCIS G. SLAY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Simon Gebregziabher for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $51.30. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss all of plaintiff's official capacity claims. However, the Court will direct the Clerk of Court to issue process on defendants Marcus Bush, Christopher Tanner, Paul Piatchek, Matthew Burle, and Mickey Christ in their individual capacities.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make

monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion to proceed in forma pauperis, plaintiff submitted a copy of his certified inmate account statement. (Docket No. 3). The account statement shows an average monthly deposit of $256.52. The Court will therefore assess an initial partial filing fee of $51.30, which is 20 percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is currently incarcerated at the Greenville Federal Correctional Institution in Greenville, Illinois. He brings this action pursuant to 42 U.S.C. § 1983, alleging that excessive force was used against him during his arrest by Saint Louis Metropolitan Police officers. His complaint names the following defendants: Francis G. Slay; Richard Gray; Thomas Irwin; Erwin Switzer; Marcus Bush; Christopher Tanner; Paul Piatchek; Matthew Burle; and Mickey Christ. (Docket No. 1 at 2-3). Defendants Slay, Gray, Irwin, and Switzer are members of the Board of Police Commissioners and are sued in their official capacities only. (Docket No. 1 at 1). Defendants Bush, Tanner, Piatchek, Burle, and Christ are law enforcement officers and are sued in both their individual and official capacities. (Docket No. 1 at 1-2).

On March 16, 2017, at approximately 12:30 in the afternoon, plaintiff was traveling in his parent's Ford Freestyle automobile westbound on Martin Luther King Drive in St. Louis, Missouri. (Docket No. 1 at 4). While on Martin Luther King Drive, he noticed a dark sedan following his vehicle. Nevertheless, he continued to his parent's residence on Brown Road in North County. When he pulled into his parent's driveway, he was flagged down by a friend who asked plaintiff for a ride. Plaintiff states that he advised his friend that he thought he was being followed.

At some point thereafter, plaintiff drove to a carwash on Natural Bridge Road, where he parked in the second stall. A dark sedan pulled into the first stall, directly to his left. Plaintiff states that defendant Tanner, a detective with the Saint Louis Metropolitan Police Department, placed spike strips in front of plaintiff's vehicle, without plaintiff's knowledge. Meanwhile, other vehicles pulled into the carwash, attempting to box plaintiff into the stall. Plaintiff alleges that these vehicles were unmarked and did not have sirens.

Plaintiff claims he did not know that law enforcement was attempting to take him into custody. (Docket No. 1 at 5). Instead, fearing for his life because his brother had recently been killed, he pulled out of the carwash onto Natural Bridge Road. In doing so, plaintiff ran over the spike strips, puncturing his tires. Despite the damage to his vehicle, he made it to Interstate 70. At this point, he acknowledges that he knew law enforcement was in pursuit of his vehicle. Indeed, during the pursuit, plaintiff threw a firearm out of the passenger-side window.[1]

Plaintiff attempted to merge onto Highway 170 South, but due to the blown-out tires, he had to pull over onto the exit ramp. He exited the vehicle and began to run away on foot. Plaintiff states that within a matter of seconds, he noticed an unmarked vehicle coming directly

---

[1] As a result of this incident, plaintiff was charged in federal court with being a felon in possession of a firearm. *United States v. Gebregziabher*, No. 4:17-cr-165-JAR-1 (E.D. Mo. Apr. 12, 2017). He pled guilty and was sentenced to a term of 72 months' imprisonment.

towards him. He alleges that defendant Piatchek, a lieutenant with the Saint Louis Metropolitan Police Department, was driving the vehicle. Plaintiff further alleges that Lieutenant Piatchek "willfully" hit him with the vehicle, despite plaintiff's efforts to get out of the way.

Plaintiff claims that this incident was observed by Detective Tanner, and by defendants Burle, Bush, and Christ, who are officers of the Saint Louis Metropolitan Police Department. (Docket No. 1 at 12). He further claims that Detective Tanner, Officer Burle, Officer, Bush, and Officer Christ did nothing to intervene to prevent Lieutenant Piatchek from striking plaintiff with Lieutenant Piatchek's vehicle.

Upon being struck by the automobile, plaintiff states that his shoe came off and that he was "instantly in extreme severe pain and agony" and "could not move." (Docket No. 1 at 5). Plaintiff claims that he was surrounded by roughly ten law enforcement officers, their guns drawn and pointed at him. While on the ground, he was cuffed with his hands behind his back.

Plaintiff states that he heard an unknown officer yelling "hold up, hold up, don't do it, we've got a witness in the car." Thereafter, without further warning, plaintiff alleges that Detective Tanner deployed a taser against him. Plaintiff states that he screamed "in agony." (Docket No. 1 at 6). Plaintiff claims that this incident was observed by Lieutenant Piatchek, Officer Burle, Officer Bush, and Officer Christ. (Docket No. 1 at 13). He further claims that Lieutenant Piatchek, Officer Burle, Officer Bush, and Officer Christ all had the ability to intervene to keep him from being tasered, but that none attempted to stop Detective Tanner.

While still on the ground, plaintiff accused Lieutenant Piatchek of running him over and trying to kill him. (Docket No. 1 at 6). Plaintiff states that Lieutenant Piatchek responded by saying: "I don't give a f**k, f**k your leg, you lucky we didn't kill you." Then, Lieutenant Piatchek picked up plaintiff's shoe and attempted to slam it on his foot, causing him

"unnecessary pain and distress." Plaintiff states that Lieutenant Piatchek attempted to put his shoe on his injured foot several times, by both kicking and slamming the shoe against his foot. (Docket No. 1 at 14). This was observed by Detective Tanner, Officer Burle, Officer Bush, and Officer Christ. None of these officers intervened to stop Lieutenant Piatchek.

Eventually, plaintiff was picked up by two unknown officers and "thrown in the back seat of a dark colored sedan." (Docket No. 1 at 6). Upon questioning, plaintiff refused to provide his identifying information. He alleges that an officer pulled a firearm and pointed it at his head, but he does not know the name of the officer responsible for this action.

Plaintiff states that he was transported by two unknown law enforcement officers to the emergency room at Barnes Jewish Hospital. He underwent an x-ray, which showed a fractured foot and multiple ligament tears. Afterwards, he was taken to the Saint Louis City Justice Center, where he was seen by a physician and given Tylenol 3 for pain. He remained at the Justice Center for 3 to 5 days, before being released to the police departments of Saint John, Missouri, and University City, Missouri, for questioning on unrelated crimes. (Docket no. 1 at 6-7). After being released to the community, plaintiff went to DePaul Hospital, where he was told he had a fractured foot and a knee injury that would require surgery.

On May 29, 2017, plaintiff underwent reconstructive knee surgery to replace his ACL, PCL, and MCL ligaments. Screws were also placed into his knee. He has since had another corrective surgery. Following surgery, plaintiff asserts that it took a year for him to be able to walk without crutches. Plaintiff claims that these injuries were caused by the excessive force used in his March 16, 2017 arrest.

Plaintiff seeks compensatory damages in the total amount of $17 million, and punitive damages in the total amount of $85 million. (Docket No. 1 at 15).

## Claims

Plaintiff has organized his claims into seven separate counts. Count I is an excessive force claim against Lieutenant Piatchek for striking plaintiff with Lieutenant Piatchek's vehicle. (Docket No. 1 at 8). Count II is an excessive force claim against Detective Tanner for tasering plaintiff while plaintiff was handcuffed and on the ground. (Docket No. 1 at 8-9). Count III is a second excessive force claim against Lieutenant Piatchek, this time for allegedly slamming and kicking plaintiff's shoe against plaintiff's injured foot. (Docket No. 1 at 9). Count IV is a claim against the members of the Saint Louis Board of Police Commissioners, alleging that the City of Saint Louis violated plaintiff's civil rights through its policy, custom, and practices. (Docket No. 1 at 10). Count V is a failure to intervene claim against Detective Tanner, Officer Burle, Officer Bush, and Officer Christ for failing to prevent Lieutenant Piatchek from striking plaintiff with Lieutenant Piatchek's vehicle. (Docket No. 1 at 12). Count VI is a failure to intervene claim against Lieutenant Piatchek, Officer Burle, Officer Bush, and Officer Christ for failing to stop Detective Tanner from tasering plaintiff while plaintiff was handcuffed and on the ground. (Docket No. 1 at 13). Finally, Count VII is a failure to intervene claim against Detective Tanner, Officer Burle, Officer Bush, and Officer Christ for failing to stop Lieutenant Piatchek from slamming and kicking plaintiff's shoe against plaintiff's injured foot. (Docket No. 1 at 14).

## Discussion

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants are liable to him for injuries he received during the course of an arrest that took place on March 16, 2017. For the reasons discussed below, the Court will dismiss plaintiff's official capacity claims in Count IV, as well as the failure to intervene claims in Count V. However, the Court will direct the Clerk of Court to issue process on Lieutenant Piatchek in his individual capacity as to

plaintiff's claims of excessive force in Count I and Count III, and failure to intervene in Count VI; on Detective Tanner in his individual capacity as to plaintiff's claims of excessive force in Count II, and failure to intervene in Count VII; and Officer Burle, Officer Bush, and Officer Christ in their individual capacities as to plaintiff's claims of failure to intervene in Count VI and Count VII.

### A. Count I and Count III – Excessive Force Claims Against Lieutenant Piatchek

Plaintiff alleges that Lieutenant Piatchek used excessive force in effecting his arrest. "The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018). *See also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person"); and *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen"). The violation of this right is sufficient to support an action under § 1983. *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

Whether force is excessive under the Fourth Amendment requires a determination of whether or not law enforcement officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015). Factors that are relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight." *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018).

Here, plaintiff claims that Lieutenant Piatchek twice used excessive force against him on March 16, 2017. First, in Count I, plaintiff alleges that Lieutenant Piatchek intentionally struck him with Lieutenant Piatchek's service vehicle, injuring his foot and knee. Second, in Count III, plaintiff asserts that Lieutenant Piatchek slammed and kicked his shoe against his injured foot, causing him pain. While plaintiff does acknowledge attempting to flee from police, his facts tend to show that he was not an immediate threat to the safety of law enforcement officers or others when Lieutenant Piatchek allegedly used potentially-deadly force against plaintiff by hitting him with a vehicle. Furthermore, when Lieutenant Piatchek allegedly kicked and slammed a shoe against plaintiff's foot, plaintiff states that he was on the ground, injured, and handcuffed, and thus unable to evade or resist arrest. The Court must accept these allegations as true and make all reasonable inferences in plaintiff's failure. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). As such, plaintiff's excessive force claims against Lieutenant Piatchek in his individual capacity in Count I and Count III are sufficient for purposes of § 1915 review.

### B. Count II – Excessive Force Claim Against Detective Tanner

Plaintiff alleges that Lieutenant Tanner also used excessive force in effecting his arrest. As noted above, "[t]he Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson*, 894 F.3d at 998. Whether force is excessive under the Fourth Amendment requires a determination of whether or not law enforcement officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ellison*, 796 F.3d at 916. Factors that are relevant to the reasonableness of an officer's conduct include "the severity of the crime

at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Burnikel*, 886 F.3d at 710.

In Count II, plaintiff claims that Detective Tanner deployed a taser against him while plaintiff was on the ground, injured, and in handcuffs. Plaintiff's facts indicate that he was not resisting arrest or presenting any risk to the officers. Accepting these facts as true, plaintiff's claim of excessive force against Detective Tanner in his individual capacity in Count II is sufficient for purposes of § 1915 review.

### C. Count IV – Official Capacity Claims

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). Plaintiff alleges that all defendants are City of Saint Louis employees. As such, his official capacity claim against each individual defendant is actually a claim against the City of Saint Louis.

A local governing body such as a municipality can be sued directly under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail on such a claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of the City of Saint Louis.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted

and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Alternatively, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Here, plaintiff has not demonstrated the liability of the City of Saint Louis by any of these three methods.

First, plaintiff has failed to allege that his constitutional rights were violated due to a City of Saint Louis policy. His vague assertion that the City of Saint Louis had "policies" that resulted in law enforcement officers using excessive force during arrests is merely a legal conclusion, and not entitled to a presumption of truth. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) (stating that "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative

level"). Specifically, he points to no "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body" as causing his alleged injuries.

Second, plaintiff has failed to state a claim that his constitutional rights were violated due to a custom of the City of Saint Louis. In support of this claim, and to show the purportedly "widespread" nature of the misconduct, plaintiff attached four cases arising in the United States District Court for the Eastern District of Missouri. All four cases involve claims of excessive force against the Saint Louis Metropolitan Police Department. These cases alone, however, do not demonstrate a "widespread, persistent pattern of unconstitutional misconduct." Rather, the cases are isolated in time. For example, the tasering in *Fletcher v. Tomlinson*, 2014 WL 5425555 (E.D. Mo.) occurred on March 6, 2013, while the excessive force incident in *Crump v. Boester*, 2015 WL 8313638 (E.D. Mo.) took place on March 21, 2014. Meanwhile, plaintiff asserts that excessive force was used against him on March 16, 2017, years after the incidents presented in plaintiff's cases. Moreover, even if it is assumed that plaintiff has demonstrated widespread misconduct, he has presented no factual allegations showing that policymaking officials were given notice of such misconduct, much less that they were deliberately indifferent to or tacitly authorized it.

Finally, plaintiff has not established that his constitutional rights were violated due to a failure to train on the part of the City of Saint Louis. That is, he has failed to allege a "pattern of similar constitutional violations by untrained employees."

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an

unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). As discussed above, plaintiff's facts do not support the proposition that the City of Saint Louis had a policy or custom that would make them liable for the alleged violation of plaintiff's constitutional rights. As such, his official capacity claims must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

**D. Count V – Failure to Intervene Claims Against Detective Tanner, Officer Burle, Officer Bush, and Officer Christ**

Under the Fourth Amendment, a police officer may be held liable for failing to intervene to prevent the unconstitutional use of force by another officer. *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009). "To establish a failure to intervene claim, however, the plaintiff must show that the officer observed or had reason to know that excessive force would be or was being used." *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015). *See also Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009) (explaining that police officer had duty to intervene to prevent the excessive use of force where the officer was aware of the abuse and the duration of the episode was sufficient to permit an inference of tacit collaboration).

In Count V, plaintiff alleges that Detective Tanner, Officer Burle, Officer Bush, and Officer Christ failed to prevent Lieutenant Piatchek from striking plaintiff with his service vehicle. Plaintiff's allegations, however, are insufficient because they simply recite the elements of a failure to intervene claim. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (explaining that to state a cause of action, a "pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of

factual enhancement will not suffice"). Specifically, plaintiff does not allege how Detective Tanner, Officer Burle, Officer Bush, or Officer Christ knew, in the midst of the pursuit of a fleeing subject, that Lieutenant Piatchek intended to hit plaintiff with his vehicle. Further, he does not allege facts showing that any of these defendants were in a position or had time to stop Lieutenant Piatchek, even assuming they did know he was about to commit a constitutional violation. Therefore, the individual capacity claims against Detective Tanner, Officer Burle, Officer Bush, and Officer Christ contained in Count V must be dismissed.

### E. Count VI – Failure to Intervene Claims Against Lieutenant Piatchek, Officer Burle, Officer Bush, and Officer Christ

In Count VI, plaintiff alleges that after being struck by the car, he was handcuffed while on the ground. While in the presence of Lieutenant Piatchek, Officer Burle, Officer Bush, and Officer Christ, an unidentified officer shouted: "hold up, hold up, don't do it, we've got a witness in the car." Plaintiff asserts this was a warning to other officers not to do something to him while he was defenseless, thereby giving others an opportunity to act. Nevertheless, plaintiff alleges that Detective Tanner deployed his taser against him, and that even though he clearly presented no immediate risk of danger to the officers, Lieutenant Piatchek, Officer Burle, Officer Bush, and Officer Christ all failed to stop or attempt to stop Detective Tanner from using the taser. Accepting these allegations as true, plaintiff's failure to intervene claims against defendants Piatchek, Burle, Bush, and Christ in their individual capacities in Count VI are sufficient to pass § 1915 review.

### F. Count VII – Failure to Intervene Claims Against Detective Tanner, Officer Burle, Officer Bush, and Officer Christ

In Count VII, plaintiff alleges that while on the ground with an injured foot, Lieutenant Piatchek approached him and advised plaintiff that he was "lucky we didn't kill you." Then,

Lieutenant Piatchek "attempted several times" to put plaintiff's shoe back on plaintiff's injured foot by kicking and slamming the shoe against the foot. This caused plaintiff "extreme" pain. He states that Detective Tanner, Officer Burle, Officer Bush, and Officer Christ were present while this occurred, and that none of them intervened or attempted to stop Lieutenant Piatchek. Accepting these allegations as true, plaintiff's failure to intervene claims against defendants Tanner, Burle, Bush, and Christ in their individual capacities in Count VII are sufficient to pass § 1915 review.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $51.30 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's official capacity claims against all defendants are **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's individual capacity claims in Count V against defendants Christopher Tanner, Matthew Burle, Marcus Bush, and Mickey Christ for failure to intervene are **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendants Paul Piatchek and Christopher Tanner in their individual capacities as to plaintiff's claims of excessive force. Defendants shall be served with process through the waiver of service agreement the Court maintains with the St. Louis City Counselor's Office.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendants Paul Piatchek, Christopher Tanner, Matthew Burle, Marcus Bush, and Mickey Christ in their individual capacities as to plaintiff's claims of failure to intervene. Defendants shall be served with process through the waiver of service agreement the Court maintains with the St. Louis City Counselor's Office.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this 20th day of September, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE