UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SIMON GEBREGZIABHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:19-CV-470-SPM |
| | ) |
| CHRISTOPHER TANNER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter is before the Court following a bench trial conducted on October 13, 2021, on Plaintiff Simon Gebregziabher's claim that Defendant Christopher Tanner used excessive force against him during the course of his arrest, violating his civil rights. After consideration of the pleadings, the testimony, and the exhibits submitted by the parties, the Court hereby makes and enters the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure

   **I.   FINDINGS OF FACT**

On March 16, 2017, Plaintiff Simon Gebregziabher was driving his mother's green Ford Freestyle, which was listed as a vehicle associated with "someone of interest" on the St. Louis Metropolitan Police Department's ("SLMPD") anti-crime unit's "hot sheet." The "someone of interest" to police was the Plaintiff who, at the time, had multiple active felony warrants, including a warrant for armed robbery.

Sometime between 12 noon and 2 pm on March 16th, SLMPD Detective Marcus Bush, who was patrolling the area, observed and identified the Ford Freestyle as a car on the "hot sheet." Det. Bush began following the Ford Freestyle and contacted dispatch. He obtained a photograph

1

of the "person of interest." Along with other members of the anti-crime unit, which included Defendant Christopher Tanner, Det. Bush confirmed that the person driving the Ford Freestyle matched the photograph obtained from dispatch. Det. Bush saw the Plaintiff pull onto the lot of a relatively deserted self-service carwash. At that point, he used a covert radio channel to communicate with other members of the anti-crime unit to devise a plan to attempt to conduct a traffic stop of the Ford Freestyle in the carwash.

    Pursuant to the plan hatched by the officers, Det. Bush, who was driving an unmarked police car, pulled behind the Ford Freestyle while it was parked in one of the bays of the carwash. Defendant Christopher Tanner and his partner, Detective Burleigh, pulled their unmarked police car into the bay next to the bay in which the Ford Freestyle was parked. Defendant Tanner got out of his car and deployed spike strips in front of the Ford Freestyle and notified Det. Bush that he could go ahead and activate his lights and siren. Once Det. Bush activated his lights and siren, he observed Plaintiff turn his head, look at Bush's vehicle and then pull forward onto the spike strips and flee the area at a high rate of speed.

    Police, including Defendant Tanner, chased the Ford Freestyle to an onramp for the eastbound lanes of Highway 70. Plaintiff appears to have started losing control of the car and began driving erratically. Eventually, Plaintiff exited the Ford Freestyle and started to run on foot from police. The evidence was conflicting as to whether the Plaintiff fell to the ground immediately after exiting the car or whether Plaintiff simply ran away from the car. In either case, once Plaintiff got out of the Ford Freestyle, he started running on foot away from the officers who were wearing vests emblazoned with the word "Police."

    Both Det. Bush and Tanner testified that they saw Plaintiff holding a handgun after he got out of the Ford Freestyle. Det. Bush shouted into the radio "Gun! Gun! Gun!" Det. Bush and other officers gave chase shouting "stop!" "police!" Plaintiff kept running, eventually running onto an

embankment toward motorists who were slowing or stopping to watch the police action. At some point during this foot chase, Plaintiff discarded the gun he was carrying, but Defendant Tanner did not see him discard the gun.

Although Det. Bush appears to have been the first officer to arrive, he became winded during the foot chase and was soon passed by Defendant Tanner. As he approached the Plaintiff, Tanner pulled out his bright yellow department-issued Taser. Before Tanner reached the Plaintiff, the Plaintiff tripped and fell. Although Plaintiff was still partially on the ground as Tanner approached, it appeared to Tanner that the Plaintiff was attempting to push himself back up to his feet. When he was within approximately 10 feet of the Plaintiff, Tanner deployed his Taser, resulting in two prongs shooting out and contacting the Plaintiff's body. Tanner administered a single cycle of electrical current lasting five seconds. Thereafter, the Plaintiff made no further attempts to flee and was handcuffed by other officers. Because Plaintiff complained of pain in his leg and foot, he was taken by other officers to a hospital for medical care before being transported to police headquarters.

## II. CONCLUSIONS OF LAW

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendant Christopher Tanner used excessive force against him when Defendant Tanner deployed a taser against Plaintiff during the course of Plaintiff's arrest on March 16, 2017. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. Monticello, Arkansas, City of*, 894 F.3d 993, 998 (8th Cir. 2018) (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1202 (8th Cir. 1999)). *See also Graham v. Connor*, 490 U.S. 386, 395 (1989)). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used

3

was objectively reasonable under the particular circumstances." *Coker v. Ark. State Police*, 734 F.3d 838, 842 (8th Cir. 2013) (quoting *Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006)). "The Fourth Amendment requires [the Court] to ask, based on the perspective of a reasonable officer on the scene, 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015) (quoting *Graham*, 490 U.S. at 397). Facts relevant to the analysis include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Wilson v. Lamp*, 901 F.3d 981, 989 (8th Cir. 2018) (quoting *Graham*, 490 U.S. at 396). The Court "may also consider whether 'the situation is tense, uncertain, and rapidly evolving, which would force an officer to make split-second judgments about how much force is necessary." *Thompson,* 894 F.3d at 998 (8th Cir. 2018) (quoting *Coker*, 734 F.3d at 842-43). "[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Id.* (quoting *Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013)).

  After careful consideration, and in light of the factual findings set forth above, the Court finds that the use of force by Defendant Tanner was objectively reasonable in light of the facts and circumstances confronting Defendant Tanner at the time of the incident. Several of the relevant factors identified by the Supreme Court and the Eighth Circuit favor a finding that the force used was reasonable. First, at all relevant points prior to Defendant Tanner's use of the taser, Plaintiff was clearly "attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. As soon as police cars behind him activated their lights and sirens, Plaintiff attempted to flee by car, driving away at a high rate of speed while being pursued by police cars. After losing control of his car, he exited the car and continued to flee, this time on foot, continually ignoring the commands of the officers

4

in marked police vests running after him and shouting "stop!" and "police!" Even after Plaintiff tripped and fell and was briefly on the ground, Defendant Tanner saw him attempting to push himself back up. A reasonable officer in Defendant Tanner's position would have believed that Plaintiff was continuing to attempt to flee and would evade arrest if not stopped.

Second, a reasonable officer in Defendant Tanner's position would have believed that Plaintiff "pose[d] an immediate threat to the safety of the officers or others," *Graham*, 490 U.S. at 396. Defendant Tanner saw Plaintiff with a gun at one point during the foot chase, and Tanner did not see Plaintiff discard the gun. It would have been reasonable for an officer in his position to believe that Plaintiff still had the gun and therefore posed a threat both to officers pursuing him and to nearby motorists. The reasonableness of such a belief was further bolstered by Plaintiff's willingness to endanger both police and the general public by leading police in a vehicle pursuit on public roads in a vehicle with deflating tires.

Third, the facts set forth above show that Defendant Tanner was making the judgment about whether to use force, and how much, in a situation that was "tense, uncertain, and rapidly evolving," and required him to "make split-second judgments about how much force [was] necessary." *Thompson*, 894 F.3d at 998.

Finally, the Court notes that Defendant Tanner did not use more force than was required to effect the arrest. Defendant Tanner did not use deadly force; instead, using his taser, he administered a single cycle of electrical current lasting five second. Moreover, once Plaintiff's attempts to flee had been stopped, Defendant Tanner did not continue deploy his taser (or use any other force against Plaintiff).

The Eighth Circuit has previously found an officer's use of a taser to be reasonable against a suspect, not yet handcuffed, who appears to fleeing, especially where the suspect may pose a danger to officers or the public. *See McKenney v. Harrison*, 635 F.3d 354, 360 (8th Cir. 2011)

5

(affirming grant of summary judgment on excessive force claim against officer who tased a suspect while trying to arrest her; stating, "When [the suspect] made a sudden movement toward the window, which the officers reasonably interpreted as an active attempt to evade arrest by flight, the officers were entitled to use force to prevent [the suspect]'s escape and effect the arrest. Although the charges were limited to misdemeanors, the officers executing the warrant were not required to let [the suspect] run free.") (internal citation omitted); *Boudoin v. Harsson*, 962 F.3d 1034, 1041-43 (8th Cir. 2020) (officer was entitled to qualified immunity on claim of excessive force for using a taser against a suspect who had been stopped on his motorcycle and who continued to shift his weight on the motorcycle, to move his leg up and down, and to "click" his gear shifter, "such that a reasonable officer could conclude that at any moment [the suspect] might resume flight"; noting that the officer was aware that the suspect had previously fled from other officers on his motorcycle at high speeds that posed risks to officers and others). *Cf. McManemy v. Tierney*, 970 F.3d 1034, 1038 (8th Cir. 2020) ("Under our precedent, it is reasonable for an officer to tase an uncuffed suspect who appears to be resisting arrest."); *Jackson v. Stair*, 944 F.3d 704, 711 (8th Cir. 2019) (officer's use of taser against suspect who had not been handcuffed was objectively reasonable where the officer "could have viewed [the suspect's] actions as threatening, resisting arrest, and endangering the safety of an officer").

For all of the above reasons, the Court finds that Defendant Tanner's use of the taser against Plaintiff was objectively reasonable under the circumstances. Thus, Defendant Tanner did not use excessive force, and Plaintiff's Fourth Amendment claim against him fails.

### III.   CONCLUSIONS

For the reasons stated above,

**IT IS HEREBY ORDERED** that judgment is entered in favor of Defendant Christopher Tanner, and against Plaintiff Simon Gebregziabher. A separate judgment shall accompany these

6

findings of fact and conclusions of law.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of December, 2021.